UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JO ANNE GOURDEAU,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF NEWTON and NEWTON POLICE DEPARTMENT,<br><br>Defendants. | Civil No. 13-12832-LTS |

ORDER ON REPORT AND RECOMMENDATION (DOC. NO. 61)

September 16, 2016

SOROKIN, J.

Plaintiff Jo Anne Gourdeau objects to Magistrate Judge Cabell's Report and Recommendation, Doc. No. 61, recommending that Defendants City of Newton and Newton Police Department's Motion for Summary Judgment, Doc. No. 37, be granted in part and denied in part. Doc. No. 63. Gourdeau, a Newton Police Officer, sued the City of Newton and the Newton Police Department after she applied to be a Traffic Officer and a male applicant was selected instead. She claims three violations: first, gender discrimination because Defendants selected a male colleague over her for the position of Traffic Officer in violation of Mass. Gen. Laws ch. 151B, § 4 (Count I); second, retaliation against her for complaining about gender discrimination in violation of Mass. Gen. Laws ch. 151B, § 4 (Count II); and third, considering protected Family and Medical Leave Act leave in the hiring decision in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601–2619 (Count III). After discovery, Defendants moved for summary judgment on all claims. Doc. No. 37. Pursuant to a referral,

Magistrate Judge Cabell issued a Report and Recommendation, Doc. No. 61 in which he recommends granting the City's Motion as to Counts I and II while denying it as to Count III. Gourdeau has filed a lengthy objection to Judge Cabell's recommendation on Counts I and II. Doc. No. 63.

The Court has undertaken a careful de novo review of Judge Cabell's comprehensive Report and Recommendation as well as all of the specific objections raised by Gourdeau and the underlying documents she cites in support of her objections.  Regarding the retaliation claim expressed in Count II, the Court ALLOWS the Motion for Summary Judgment for the reasons set forth in Judge Cabell's Report and Recommendation. Several additional points bear comment. Gourdeau cites admissible evidence (in the form of her own testimony) that she suffered in various ways in the period after she complained of discrimination in her non-selection for the position of Traffic Officer. See Doc. No. 63 at 3–5. Gourdeau bears the burden, inter alia, of submitting sufficient evidence to allow the inference that her protected activity caused the adverse employment action Defendants took against her. See Ritchie v. Dep't of State Police, 805 N.E.2d 54, 62 (Mass. App. Ct. 2004).  This she has not done.

For example, Gourdeau asserts that friendships with colleagues soured as a result of her complaints. Gourdeau's mere assertion that a friendship with a colleague soured suffices at summary judgment to establish that the friendship soured. But it is not enough, either alone or coupled with her conclusory statement that it soured because of her protected activity, to establish causation at least where, as here, she has not submitted evidence supporting her personal knowledge of the causation connection or any other basis to drawn the inference. Based on the assertions in her testimony, Gourdeau has personal knowledge that the friendships soured; she has not advanced evidence regarding why they soured. See Doc. No. 48 at 6 (noting only that

the friendships ended after Gourdeau complained); Doc. No. 63-2 at 23 (noting only that Gourdeau had a good relationship with a colleague prior to the grievance). Sometimes the temporal sequence of events may support a causation inference. Sanchez-Rodriguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 15 (1st Cir. 2012).  Ordinarily, however, this requires a fairly close connection in time, especially when a plaintiff cites no other evidence to support the inference. See Ahern v. Shinseki, 629 F.3d 49, 58 (1st Cir. 2010) ("Without some corroborating evidence suggestive of causation . . . a gap of several months cannot alone ground an inference of a causal connection between a complaint and an allegedly retaliatory action."). Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004) ("The Supreme Court has stated that '[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima favie case uniformly hold that the temporal proximity must be very close'" (alteration in original) (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001)) Other than locating the souring of relationships as occurring after her protected activity, Plaintiff has submitted no further evidence.  Thus, any causal relationship is based only on Gourdeau's speculation not on personal knowledge. Her speculation is not evidence. See Darchak v. City of Chi. Bd. of Educ., 580 F.3d 622, 631 (7th Cir. 2009) ("[U]ncorroborated, self-serving testimony cannot support a claim if the testimony is based on speculation, intuition, or rumor or is inherently implausible." (quotation marks omitted)).  Similarly, Gourdeau points out that "after" her complaints she "received significantly fewer overtime opportunities" and "Sergeant Babcock stopped posting the department's overtime numbers." Doc. No. 63 at 3. But, again, for the same reasons, Gourdeau has failed to establish a causal connection.

Next, Gourdeau asserts in her objection to the Report and Recommendation that the collection of all the various things she has identified constituted a retaliatory "hostile environment" in the Traffic Bureau arising after her complaints of gender discrimination. Doc. No. 63 at 11. Establishing a hostile work environment requires showing that Gourdeau was "subjected to severe or pervasive harassment that materially altered the conditions of her employment." Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998)). To be sufficient, the "harassment must be 'objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" Id. (quoting Faragher, 524 U.S. at 787). The "commonplace indignities typical of the workplace (such as tepid jokes, teasing, or aloofness)" would be insufficient to establish a hostile work environment but "severe or pervasive harassment in retaliation for engaging in protected activity" would be sufficient. Id. Gourdeau has not established a hostile work environment. The evidence plainly establishes that she felt stressed in the division and found its atmosphere toxic, thus meeting, at least for purposes of summary judgment, the subjective standard. See Doc. No. 48 at ¶ 41; Doc. No. 48-16 at 2. As discussed above, Gourdeau fails to establish any causal relationship between many of the actions she claims Defendants took against her, such as being ostracized by former friends or having items go missing from her desk. Those indignities that remain, such as being required to provide overly formal explanations or having reports rejected for what she considers insignificant reasons, fail to meet the objective test, instead falling into the category of "commonplace indignities typical of the workplace." Noviello, 398 F.3d at 92..

At first blush, Gourdeau mounts a strong objection to the recommendation on Count I. Gourdeau cites myriad evidence in support of her assertion that Judge Cabell erred in

recommending that she failed, at step three of the McDonnell Douglas burden shifting analysis, to submit admissible evidence giving rise to an inference of pretext or discrimination. Gourdeau's best argument arises out of Haddad v. Wal-Mart Stores, 914 N.E.2d 59 (Mass. 2009).

On December 26, 2012, Captain Gromada recommended that Chief Mintz select Officer Dennis O'Brien for the Traffic Officer position, focusing on the general requirements of the job with specific mention, among other points, that the recommended (male) officer had high "ticket production".[1] See Doc. No. 48-8 at 3 (noting in a memo from Gromada to Chief Mintz that "[a]fter interviewing and reviewing the officers['] evaluations, ticket production, sick time, accident reports, and investigative reports we decided that Officer Dennis O'Brien would be a great choice for the Traffic Bureau" in part because "Officer O'Brien was the second highest producer of tickets in the Patrol Bureau"). On January 2, 2013, Gromada informed Gourdeau of her non-selection and that the other officer was the "better choice". Doc. No. 48-2 at ¶ 5. On January 4, 2013, Gourdeau stated that on January 4, 2013, Chief Mintz told her he wanted to give the "junior guy a chance." Id. at ¶ 6. On January 23, 2013, the Chief told Gourdeau that the other officer showed "more 'enthusiasm.'" Doc. No. 48-10 at 14. In a later memo, Gromada said he selected the male officer because Gromada wanted "high productivity." Doc. No. 48-11 at 2.

---

[1] Gourdeau complains that Sergeant Babcock rated her below average for producing 805 tickets while another (male) officer was rated average for issuing 807 tickets. Defendants explain the rating difference by pointing out that Gourdeau issued the 805 when her position focused on ticket writing while the other officer, a patrol officer, generated the 807 tickets when his position did not so focus. Doc. No. 63-4 at 5. Plaintiff has not rebutted this undisputed distinction. Regardless, there is no dispute that the officer selected had issued significantly more tickets than 805 or 807. Gourdeau also alleges that Babcock was biased against her throughout the selection process. The Court agrees with Magistrate Judge Cabell's Report and Recommendation on that point.

Gourdeau points to these various statements given by the Defendants explaining why she did not receive the Traffic Officer position as sufficient to establish that the legitimate reasons for her non-selection advanced by defendants were pretext. The Court disagrees. While using different words, most of the statements convey the same explanation. That the selected person was the "better choice,", that he was "high productivity", that he showed "more 'enthusiasm'", and that he "was the second highest producer of tickets in the Patrol Bureau," in the context of this case all make the same point—the department selected the person with the strongest track record of vigorous enforcement of the traffic rules.  See Doc. No. 61 at 11 (finding that all "there is just no real inconsistency in the Court's view among the various statements" because Defendants "have consistently maintained that their hiring decision can best be understood as an affirmative selection of Officer O'Brien as the best candidate rather than the conscious non-selection of the plaintiff as the presumptive selectee"). Arguably, the Chief's statement that he wanted to give the "junior guy a chance" advanced a somewhat different explanation. Accepting as I do on summary judgment that this statement advanced a different explanation for the non-selection of Gourdeau than the other statements, nonetheless, this difference, even in light of Haddad, is insufficient to give rise to an inference of pretext.  In contrast to Haddad, while different, the explanations are neither inconsistent nor counterfactual. See Haddad, 914 N.E.2d at 96–97 (noting that explanations varied from failure to secure the pharmacy, to discrepancies in the controlled drug inventory, to failure to properly monitor store charge accounts, to giving pharmacy technicians computer sign-on codes). Neither standing alone, nor viewed in light of the totality of the circumstances, as the Supreme Judicial Court analyzed the question in Haddad, do all of the facts (undisputed and those disputed facts advanced by Gourdeau), drawing all reasonable inferences in Gourdeau's favor, give rise to a permissible inference of gender

discrimination in the City's decision not to award her the position of Traffic Officer. Accordingly, Defendants' Motion for Summary Judgment is ALLOWED as to Count I.

For the foregoing reasons, as well as the reasons advanced in the Report and Recommendation, Defendants' Motion for Summary Judgment is ALLOWED as to Counts I and II, but DENIED as to Count III. Within fourteen days, the parties shall file a joint status report stating (a) the anticipated duration of trial; (b) whether the parties anticipate any mediation process and, if so, the amount of time needed for such a process (either in the Court's mediation program or otherwise as the parties prefer); and (c) whether all parties consent to the exercise of jurisdiction by the magistrate judge assigned to this case (the parties shall not report their individual positions and the failure to consent shall not result in any adverse substantive consequence).

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge